IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AISHA L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22CV964 |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Aisha L. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on October 27, 2020, alleging a disability onset date of January 27, 2020. (Tr. at 15, 169-70.)[2] Her application was denied initially (Tr. at 57-62, 76-80) and upon reconsideration (Tr. at 63-70, 82-86). Thereafter,

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 87.) On December 9, 2021, Plaintiff, along with her non-attorney representative, attended the subsequent hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26-27), and, on September 16, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

2

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since January 27, 2020, her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Lisfranc fracture of the left foot, hypertension, obesity, neuritis, and complex regional pain syndrome[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff can] sit for up to 6 hours; stand and walk for up to 2 hours; can occasionally use ramps and stairs, balance, stoop, kneel, and crouch; can

> frequently reach, handle, finger, and feel; [and] can tolerate no exposure to workplace hazards or extreme heat or cold.

(Tr. at 20.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that Plaintiff's past relevant work as a phlebotomist exceeded the above RFC. (Tr. at 25.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 26.)

Plaintiff now contends that, in assessing her RFC, the ALJ "failed to account for Plaintiff's need to elevate her left lower extremity ('LLE')" or, in the alternative, "provide an adequate and supportable explanation as to why he did not find" that Plaintiff required "this specific accommodation." (Pl.'s Br. [Doc. #9] at 1, 9.) In terms of function-by-function analysis, she specifically argues that the ALJ's decision fails to provide an "accurate and logical bridge" from the evidence about Plaintiff's foot impairment to the RFC assessment. (Pl.'s Br. at 11-13) (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir 2018)).

As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 61 Fed. Reg. 34474, 34475, 1996 WL 374184, at *1 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotation omitted). Further, the "RFC assessment must include a narrative discussion

6

describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods, 888 F.3d at 694 (internal brackets, emphases, and quotation omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

Here, Plaintiff contends that the ALJ's failure to include limitations expressly relating to Plaintiff's left foot swelling—or to explain their absence from the RFC assessment—renders his decision unsupported by substantial evidence. However, as set out below, the ALJ sufficiently explained his reasons for discounting the need for additional restrictions, including

left foot elevation. In particular, the ALJ explained that the record as a whole, including the treatment notes, objective testing, and medical opinion evidence, reflected that Plaintiff could still perform sedentary work, and as part of that analysis the ALJ found that the record failed to substantiate Plaintiff's subjective complaints that she needed to elevate her leg to waist height throughout the workday.

With respect to the ALJ's evaluation of Plaintiff's allegations regarding her symptoms, under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Commissioner, Social Security, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4-5. SSR 16-3p recognizes that "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence,

8

and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95 (internal brackets omitted). Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

(i) [Plaintiff's] daily activities;
(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, as instructed by the regulations, the ALJ considered the entire case record and explained the reasons for deviating from Plaintiff's statements regarding the impact of her symptoms on her ability to work. Whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and

requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" (internal footnote omitted)).

Here, the ALJ's decision reflects that he (1) thoroughly reviewed the medical evidence, the opinion evidence, and Plaintiff's testimony and (2) sufficiently explained his analysis of Plaintiff's subjective complaints.

The record reflects that Plaintiff fractured several bones in her left foot in a January 2020 fall. She underwent two surgeries, the first in February 2020 to repair the fractures, and the second in June 2020 to remove midfoot hardware. (See Tr. at 21-22.) During the hearing, Plaintiff testified that she could not return to her prior work as a phlebotomist because it involved constantly walking from room to room, and she has swelling and pain in her left foot when she walks on it for long periods of time. (Tr. at 39-40.) Plaintiff stated that she could walk for 30-to-45 minutes on a flat surface, but then the pain would become excruciating and her foot would be extremely swollen. (Tr. at 41.) Plaintiff stated that elevating the foot does not alleviate all of her pain and swelling, but that it takes it to a place where she can deal with the pain a little better. (Tr. at 41-42.) She further testified that her typical day involves periods of 30-45 minutes of normal activity including standing and walking, followed by an hour and a half of leg elevation in a recliner or in bed. (Tr. at 47.) However, she also testified that she did not "have any problems sitting" because she could sit in a normal upright position without putting any pressure on her left foot if she was "sitting just in a seated position." (Tr. at 45-46.)

The ALJ noted Plaintiff's testimony "that she has to elevate her leg for most of the day." (Tr. at 21.) However, the ALJ noted that she was "able to drive without difficulty" and

is "able to perform activities of daily living" (Tr. at 21.) The ALJ ultimately found, based on the record as a whole, that the extent to which Plaintiff's foot pain and swelling limited her ability to work was not as extensive as Plaintiff alleged, and that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 21.)

As part of the analysis, the ALJ undertook an extensive review of the medical evidence (Tr. at 21-24), noting that the records reflect that after Plaintiff's surgery in June 2020, it was recommended that she stop wearing the orthopedic boot and begin working on weightbearing and physical therapy to increase range of motion and circulation and reduce swelling, but Plaintiff continued to wear the boot and was discharged from physical therapy for failing to show up for three visits. (Tr. at 22; see also Tr. at 301, 308, 310, 317, 318, 321, 327, 738.) In addition, the ALJ noted that the treatment records reflect that Plaintiff's limitations were based on "difficulty and pain with weightbearing, standing, and walking." (Tr. at 22; see also Tr. at 300, 307, 308, 330, 332, 341, 343, 699, 748.)[5] The ALJ further noted that subsequent records beginning in 2021 continued to recommend stiff-soled shoes, physical therapy, and compression socks for swelling, which Plaintiff failed to do. (Tr. at 23, 693-94.) The ALJ also

---

[5] In this regard, Plaintiff's treatment records reflect that her limitations were based on standing and walking, and that she could not return to work at her prior position because it involved extensive standing and walking. (Tr. at 317 ("[P]atient is still not able to return to work, unless a strict sedentary duty position becomes available"); 343 ("Patient works for [N]ovant as a phlebotomist. Patient works a 12 hour shift with weight bearing approximately 80% of the time. Patient has pain with standing, walking, and stairs. Patient is currently unable to work due to inability to complete work duties at this time"); 633 ("Discussed with her and happy to fill out any and all paperwork moving forward since she cannot tolerate more than 20-30 minutes of standing as result of her prior injury" (emphasis omitted)).) As discussed below, the ALJ addressed these limitations in the RFC by limiting Plaintiff to only sedentary work.

noted that records and x-rays in 2021 reflected that her original injury was healed, and in August 2021 her podiatrist, Dr. Goecker, opined that her residual foot pain was nerve pain rather that posttraumatic arthropathy. (Tr. at 23, 632-33, 650, 706-07.) Plaintiff's podiatrist, Dr. Goecker, performed diagnostic nerve blocks, one of which alleviated Plaintiff's foot pain, allowing her left foot "to be touched and range-of motion exercises to be performed." (Tr. at 24, 706-07). In light of this result, "Dr. Goecker recommended aggressive physical therapy for desensitization training [while Plaintiff's] foot is anesthetized." (Tr. at 24, 707.) However, when Plaintiff returned to physical therapy in September 2021, "she discharged herself from therapy after one visit due to left foot pain" rather than completing the recommended three months. (Tr. at 24, 754.)

> The ALJ then concluded that:
>
> The above findings demonstrate that the claimant suffered fractures in her left foot that healed over time. However, she was left with residual nerve pain. There is evidence that the claimant's impairments would cause some limitations, but the record does not demonstrate that her impairments would preclude her from performing work within the parameters of the residual functional capacity, which limits the claimant to less than the full range of work at the sedentary level. <u>For instance, the claimant testified that she must elevate her leg for most of the day, but the objective evidence does not support this allegation. Physical therapy records encouraged the claimant to be more active and to stop wearing her boot. Based on the overall evidence of record, the undersigned finds that the residual functional capacity fully accounts for limitations caused by the claimant's impairments.</u>

(Tr. at 24 (emphasis added).) Thus, the ALJ considered and directly addressed Plaintiff's claims, including specifically regarding the need for elevating her leg, in light of the testimony and the medical record.

In her briefing, Plaintiff cites numerous instances in which her providers recommended leg elevation and icing as treatment for her foot pain and swelling as evidence that she required

such limitations in her RFC assessment. (Pl.'s Br. at 5-8.) However, these records reflect that Plaintiff was given instructions for "strict elevation" and no weightbearing only for the first 8-10 weeks after her surgery. (Tr. at 377, 380, 387, 393.) The later records reflect that Plaintiff reported that her foot was tight "at the end of the day which improves with elevation," and her providers recommended she continue the icing and elevation, which appears to involve only elevation as needed at the end of the day, not a requirement for "strict elevation" like the period immediately after the surgery. (Tr. at 289, 292, 630, 633, 691, 699, 702.)

In addition, Plaintiff's assertion ignores her providers' additional recommendations and Plaintiff's failure to follow them. As Defendant correctly notes, Plaintiff's treating providers repeatedly explained to Plaintiff "that she needed to get out of the walking boot to prevent further decompensation of the foot" (Def.'s Br. [Doc. #13] at 4), in order to address the pain and swelling, and she was directed to switch to stiff-soled shoes (Tr. at 295, 304, 315, 317, 327). Despite this recommendation from July 2020 forward, Plaintiff continued to wear her walking boot for as late as January 2021, and then later in 2021 wore flip-flops rather than supportive shoes. (Tr. at 295, 304, 315, 644-46, 747, 749.) As documented above, she also failed to comply with recommendations regarding physical therapy. (See Tr. at 22-24.) The ALJ also explained that Plaintiff's continued foot pain primarily stemmed from neurological, rather than orthopedic, causes (Tr. at 23, 24, 633, 706-07).

Ultimately, the ALJ set the RFC based on the record as a whole, and specifically included the limitation to sedentary work. As part of the analysis, the ALJ considered the opinions of the state agency physicians, who concluded that Plaintiff was capable of medium work. The ALJ found these opinions not persuasive in light of Plaintiff's limitations related

13

to standing and walking, and instead limited her to sedentary work. This limitation to sedentary work is consistent with Plaintiff's testimony that she did not have "any problems sitting" but that standing and walking caused pain and swelling. (Tr. at 39, 41, 45-46.) This limitation to sedentary work is also consistent with her reported daily activities and with her function reports noting no limitations in sitting. (Tr. at 21, 202, 222-25.) This limitation is also consistent with the medical records reflecting that Plaintiff's limitations were based on "weightbearing, standing, and walking," as noted above. Further, the limitation to sedentary work would also avoid the prolonged walking or standing that would result in swelling, as described by Plaintiff. (Tr. at 39, 41.)

To the extent Plaintiff testified regarding additional limitations, and specifically to the extent Plaintiff contends that she must elevate her foot to waist-height throughout the workday, the ALJ did not find that the record supported that contention, based on (1) Plaintiff's own testimony and function reports regarding her daily activities (Tr. at 21), (2) the medical records reflecting that Plaintiff's limitations were based on "weightbearing, standing, and walking," which were addressed by the limitation to sedentary work (Tr. at 22), (3) Plaintiff's failure to follow other recommendations to address the pain and swelling (Tr. at 24), and (4) the fact that the pain was determined to be nerve pain (Tr. at 23), as discussed above. Thus, the ALJ thoroughly considered the evidence in making an evaluation of Plaintiff's alleged symptoms and explained his reasoning, and then undertook a function-by-function analysis in setting the RFC. Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted

above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, and clearly explained the reasons for his determination. That determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion to Reverse the Decision of the Commissioner should therefore be denied.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #9] is DENIED, that Defendant's Dispositive Brief [Doc. #13] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 18th day of March, 2024.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge